Exhibit

A

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| ESTATE OF ANDREW W. HAYES, ADMINISTRATOR, RALPH K. HAYES | ) ) ) | CIVIL ACTION NO. 3:00 - CV - 1504 (AWT) |
|     Plaintiff, | ) ) | |
| VS. | ) ) | JUNE 28, 2002 |
| INVIGORATE INTERNATIONAL, INC., CABOT INDUSTRIES, LLC., PARAMOUNT HEALTH & FITNESS, INC., And JBN ENTERPRISES, INC.     Defendants. | ) ) ) ) ) ) | |

**PLAINTIFF'S INTERROGATORIES AND**
**REQUESTS FOR PRODUCTION TO CABOT INDUSTRIES, LLC.**

All References to Cabot Industries, LLC, Refers To Cabot
Industries, LLC, Their Subsidiaries, Successors and Assigns

## A. INTERROGATORES

    1. Please state:

    (a)   The name and business address of the person answering these interrogatories and requests for production;

    (b)  The title of the persons answering these interrogatories and requests for production;

    (c)  The name, business address and title of any person who is consulted to answer these interrogatories and/or requests for production identifying, by number, the



interrogatory and/or request for production which that person provided assistance in formulating a response; and,

(d)   The name or title of any books, records, documents, papers, photographs or videos which were consulted to answer these interrogatories and/or requests for production identifying, by number, the interrogatory and/or request for production which that item provided assistance in formulating the response.

2. Prior to completing answers to these interrogatories, have you made a due and diligent search of all books, records, and papers of the defendant and due and diligent inquiry of all agents and employees of the defendant with a view to obtaining all information available in this action?

3.    Please state the nature of your business, locations(s) of your business and the number of years that you or your business, and the number of years that you or a predecessor have been in this business.

4.  Provide the names and addresses of all persons known to the defendant and their attorneys who have knowledge of the factual matter relating to this action and the general nature of the facts known to each person.

5. Are you a corporation? If so then:

(a) Set forth state or country of your incorporation;

(b) Set forth the date of your incorporation;

(c) State the location of your principal office;

(d) Identify your shareholders;

(e) Identify your articles of incorporation and bylaws; and,

(f) Identify your President and Vice President and other officers.

6. If you are not a corporation, please state the type of entity that you believe you are (e.g. general partnership, limited partnership, sole proprietorship, etc.) and:

(a) Identify all general partners and/or owners;

(b) Describe the precise nature of your business; and,

(c) Identify any and all documents that describe, relate or refer to the type of business entity you are (such as, for example, partnership agreements).

7. Is your name correctly set forth in plaintiff's Complaint? If not, please state your correct name(s).

8. Describe in detail the relationship between Cabot Industries, LLC and Invigorate International (hereinafter "Invigorate") as of April 4, 1999, identify every document that

describes or relates or refers to that relationship, and identify individuals at Invigorate and Cabot Industries, LLC. who are familiar with this relationship.

9. Describe in detail the relationship between Cabot Industries, LLC and Paramount Health and Fitness, Inc. as of April 4, 1999, identify every document that describes or relates or refers to that relationship, and identify individuals at Cabot Industries, LLC and Paramount Health and Fitness, Inc. who are familiar with this relationship.

10. Were you covered by or were you the subject of any policy of insurance (including self-insurance and access/umbrella insurance) that might provide coverage for the injuries involved in this lawsuit? If so, state the following as to each such policy of insurance:

   (a) The name of each insured under the policy;

   (b) The period of the policy;

   (c) The amount of coverage provided by the policy for bodily injury liability for each person, for each occurrence and in the aggregate;

   (d) The amount of coverage remaining for satisfaction in this case;

   (e) The type of policy;

   (f) The name of the carrier by which the policy was issued; and,

   (g) Identify each and every document that constitutes the insurance policy and/or its declaration page.

11.  If you answered the preceding interrogatory in the affirmative, state whether any exclusion under the policy is or may be applicable to the claims presented by plaintiff's Complaint, and,

(a)  State the precise language of each exclusion which is or may be applicable; and,

(b)  Set forth facts that might support application of the exclusion.

12.  Is this case being defended by an attorney who has entered his/her appearance on your behalf subject to a reservation of rights agreement between you and your insurance carrier? If so, set forth:

(a)  The name of each party to the agreement;

(b)  The date the agreement was entered into; and,

(c)  The stated position of the carrier as to the reservation of rights.

13.  State whether you or your insurance carrier or anyone acting on behalf of you or your insurance carrier has conducted a review, inquiry or investigation, excluding matters protected by the attorney – client privilege or work product doctrine, concerning:

(a)  The accident, the manner in which the accident occurred, the conditions that existed at the scene of the accident at the time of the accident or the circumstances surrounding the accident;

(b) The injuries, losses or damages claimed by plaintiffs;

(c) The identity or location of any witnesses or other person who may have information concerning the subject referred to in any of the other parts of this interrogatory; or

(d) The identity or location of any documents containing information concerning the subjects referred to in the preceding parts of this interrogatory.

14. If your answer to any part of the preceding interrogatory is in the affirmative for each such review, inquiry, or investigation:

(a) State the nature of the review, inquiry or investigation;

(b) Identify each person, corporation or other entity on whose behalf the review, inquiry or investigation was conducted;

(c) Identify each person who participated in the review, inquiry or investigation and state what each such person did with respect to the review, inquiry or investigation;

(d) State when the review, inquiry or investigation was conducted;

(e) State why the review, inquiry or investigation was conducted;

(f) State the findings or results of the review, inquiry or investigation; and,

(g) Identify each document prepared or obtained in connection with the review, inquiry or investigation and each document containing information concerning the review, inquiry or investigation.

15. State whether you know of any other person, corporation, governmental agency or other entity other than you or your insurance carrier which has conducted any inspection, review, inquiry or investigation concerning:

(a) The accident, the manner in which the accident occurred, conditions which existed at the scene of the accident at the time of the accident or the circumstances surrounding the accident;

(b) The injuries, losses or damages claimed by plaintiffs;

(c) The identity or location of any witnesses or other persons who may have information concerning the subject referred to in any other parts of this interrogatory; or,

(d) The identity or location of any documents containing information concerning the subjects referred to in the preceding parts of this interrogatory.

16. If your answer to the preceding interrogatories is in the affirmative, for each such review, inquiry or investigation:

(a) State the nature of the review, inquiry or investigation;

(b) Identify each person, corporation or other entity on whose behalf the review, inquiry or investigation was conducted;

(c) Identify each person who participated in the review, inquiry or investigation and state what each such person did with respect to the review, inquiry or investigation;

(d) State when the review, inquiry or investigation was conducted;

(e) State why the review, inquiry or investigation was conducted;

(f) State the findings or results of the review, inquiry or investigation; and,

(g) Identify each document prepared or obtained in connection with the review, inquiry or investigation and each document containing information concerning the review, inquiry or investigation.

17. State whether you or your insurance carrier or anyone acting on behalf of you or your insurance carrier, excluding your attorneys, has interviewed, contacted or taken a statement from any person:

(a) Who may have information concerning the accident;

(b) Who witnessed the accident or any part of the accident;

(c) Who may have information concerning the accident, the manner in which the accident occurred, the conditions which existed at the scene of the accident at the time of the accident or the circumstances surrounding the accident;

(d) Who may have information concerning the identity, condition, operation or location for the instrumentalities involved in the accident;

(e) Who may have information concerning the injuries, losses or damages sustained by plaintiffs as a result of the accident; or,

(f) Who may have any other information concerning the subject matter of this action.

17.  If your answer to any part of the preceding interrogatory is in the affirmative, for each such interview, contact or statement:

(a)  Identify each person interviewed or contacted;

(b)  Identify each person, corporation or other entity on whose behalf the interview was conducted or the contact was made;

(c)  Identify each person who participated in conducting the interview or making the contact and state what each such person did with respect to the interview or contact;

(d)  State when the interview was conducted or the contact was made;

(e)  State why the interview was conducted or the contact was made;

(f)  State whether a statement was taken and the form of the statement (eg recorded, written, videotaped); and,

(g)  Identify each document prepared or obtained in connection with the interview or contact and each document containing information concerning the interview or contact.

19.  State whether you or any of your directors, officers, employees or other agents or representatives have made any statement, excluding attorney – client communications, concerning the subject matter of this action and if so, for each such statement:

(a)  The person who made the statement;

(b)  Identify each person, corporation or other entity on whose behalf the statement was obtained;

(c)  Identify each person who participated in obtaining the statement;

(d)  State when the statement was obtained;

(e)  State why the statement was obtained;

(f)  Set forth the contents of the statement; and,

(g)  Identify each document concerning the statement or any part thereof, including any sound recording as well as any transcript or printed or written version of the statement.

20.  State the names and addresses of all persons you intend to call as witnesses at the trial of this case.

21.  Identify all reports and other documents (except reports of experts consulted by you whom you do not intend to call at trial) which describe the happening of the accident or the cause thereof, giving identification of the persons who prepared the reports or documents, the dates and persons who have custody thereof.

22.   State whether you presently manufacture, sell, or distribute or at any time have manufactured, sold or distributed, the substance known as "Invigorate", and provide the time period when you manufactured, sold or distributed said product.

23.   Describe the elements and/or ingredients of the substance known as "Invigorate" and describe:

    (a)   Approximately how much of each ingredient is contained in the substance known as "Invigorate"; and

    (b)   Whether the elements and/or ingredients of the substance known as "Invigorate" are added in a uniform fashion to each  dosage, whether you manufacture each element and/or ingredient of the substance known as "Invigorate", and if not, the name and address of the corporation or corporations which do manufacture each of the elements and/or ingredients of the substance known as "Invigorate".

24.   Describe the packaging of the substance known as "Invigorate", including:

    (a)   The size and shape of the packaging;

    (b)    Whether each of the elements and/or ingredients of the substance known as "Invigorate" appear on the packaging;

    (c)   Whether any label is attached to the packaging; and,

(d)  Whether such label, if any, contains any warnings concerning any physical effects that the substance known as "Invigorate" may have on a person or persons ingesting it, and state the substance of the warnings prior to April 4, 1999.

(e)  State whether the warnings have changed since April 4, 1999.

25.  Describe whether the substance known as "Invigorate" is distributed or sold, or ever has been distributed or sold, under a different name or names or in different types of packaging and, if so, describe:

(a)  Each of the different brand names that the substance known as "Invigorate" is distributed or sold under;

(b)  Describe each of the types of packaging that the substance known as "Invigorate" is distributed or sold under, if sold under a different name ; and,

(c)  Please describe the labels, if any, on each of the different packaging for the substance known as "Invigorate" when it is distributed or sold under a different name.

26.  Please describe any and all physical effects that the substance known as "Invigorate" is designed to have on a person or persons ingesting it.

27.   Please describe any and all possible adverse side effects that anyone at your corporation was aware of as of April 4, 1999, that the substance known as "Invigorate" could have on a person or persons ingesting it and for each such side effect please describe:

(a)  The extent and effect of the extent of the adverse side effect on the person or persons ingesting it;

(b)  The length of time that the adverse side effects will last in a person or persons ingesting it; and,

(c)  The rate at which such side effects have been documented by your corporation and samplings of person or persons who have ingested the substance known as "Invigorate".

28.   State the date upon which the first dosage or bottle of the substance known as "Invigorate" was sold commercially, whether you distributed the first dosage, and please answer the following:

(a)  Approximately how many dosages or units of the substance known as "Invigorate" have been sold commercially between the date of the first sale and April 4, 1999;

(b)  Approximate revenue and profits generated for the benefit of your corporation on a yearly basis between the date of the first sale of the first dosage or unit of the substance known as "Invigorate" and April 4, 1999;

(c)   The commercial establishments that distributed or sold the substance known as "Invigorate" during the first year that it was in production;

(d)   The names of the commercial establishments that distributed or sold the substance known as "Invigorate" during the year 1999;

(e)   Whether there have been any changes in the packaging of the substance known as "Invigorate" since the first time it was sold commercially and April 4, 1999;

(f)   Whether there have been any changes in the elements and/or ingredients of the substance known as "Invigorate" since the date of its first sale and April 4, 1999; and,

(g)   Whether there have been any changes in the approximate amounts of the various elements and/or ingredients of the substance known as "Invigorate" between the date of its first sale and April 4, 1999.

29.   State whether your corporation conducted any testing of the substance known as "Invigorate" prior to its release into the market and sale to individual consumers, and if any such testing was done describe:

(a)   Any and all documents relating to this testing;

(b)   Provide a general description of the testing periods, the amount of people, if any, on whom this substance was tested;

(c)  Whether any of those persons, if any, had any adverse side effects to the substance known as "Invigorate"; and,

(d)  State whether any of those persons, if any, had a paralytic or fatal reaction to the substance known as "Invigorate" and the names and addresses of the persons and/or corporations who conducted this testing and provided any documentation or statistical information regarding such testing.

30.    State whether your corporation ever demanded from the manufacturer of the substance know as "Invigorate" any documentation relating to the safety of the substance, testing of the substance, or adverse side effects of the substance, prior to commencing the distribution of the product, and identify every document relating to these issues.

31.  State whether your corporation registered the substance known as "Invigorate" with any state or federal government agency or agent, including the Food and Drug Administration, and if so, state:

(a)  When such registration or registrations occurred;

(b)  How many such registrations occurred;

(c)  Identify any documents relating to such registration or registrations; and,

(d)    State how many registration or registrations occurred between the time that "Invigorate" was first manufactured and April 4, 1999, and for each such registration

or registrations state the names of the persons or corporations who were in charge of providing such information to the state or federal agencies or agents.

32.   State whether you know of any state or federal agencies or agents who conducted any independent testing of the substance known as "Invigorate" either prior to or after its release as a commercial product into the market place, and if so, describe:

(a)  Any documents in your possession relating to such test or tests;

(b)  The names of the state or federal agencies or agents responsible for such test or tests;

(c)   The names of any persons or corporations affiliated with your corporation who worked with the state or federal agencies or agents during such test or tests;

(d)  The dates when such test or tests occurred; and,

(e)  The results, if any, of such test or tests.

33.   Please describe any and all attempts by the Food and Drug Administration or any other state or federal agencies or agents to intervene in and/or stop the sale or distribution of the substance known as "Invigorate" between the time when it was first manufactured for commercial sale and April 4, 1999, and for each such attempted intervention describe:

(a) The date of the attempted intervention;

(b)  Any and all documents related to such attempted intervention;

(c)  Any action taken by your corporation in response to such attempted intervention;

(d)   Any action taken by such state or federal agencies or agents pursuant to such attempted intervention; and,

(e)   The ultimate or eventual outcome of such attempted intervention.

34.   State whether any governmental regulation or standard, any organization's standard or recommended practice or procedure, or any in-house standard or recommended practice or procedure was applied or adhered to with respect to the formulation or design of the substance known as "Invigorate".

35.   If your answer to the preceding interrogatory is in the affirmative, for each such regulation, standard or recommenced practice or procedure, describe:

(a)   The entity that promulgated the regulation, standard or recommended practice or procedure;

(b)   The citation, title, name and/or number of the regulation, standard or recommended practice or procedure and the effective date of the regulation, standard or recommended practice or procedure; and,

(c)   How the regulation, standard or recommended practice or procedure was applied or adhered to.

36.   At any time between the date when you first formulated, designed or sold the substance known as "Invigorate" and the date of the accident, did you have any systems or procedures for determining:

   (a)  Whether your products were safe for use;

   (b)  Whether any instructions or warnings supplied with your products were adequate;

   (c)  Whether your products complied with any applicable design, manufacturing, testing or performance specifications; or,

   (d)  Whether your products complied with any governmental regulation or standard, any organization standard or recommended practice or procedure, or any in-house standards or recommended practice or procedure.


37.   If your answer to any subpart of the preceding interrogatories is in the affirmative, for each such system or procedure:

   (a)  Describe the system or procedure;

   (b)  State when you had the system or procedure;

   (c)  State how you implemented the system or procedure;

   (e)  Identify each person employed by or representing you who had overall responsibility for implementing the system or procedure; and.

   (f)  Identify each document describing or containing information concerning the system or procedure of implementation of the system or procedure.

38. Since the accident involving the plaintiff in this action, have you developed and/or implemented any systems or procedure for determining with respect to Invigorate:

(a) Whether it is safe for use;

(b) Whether any instructions or warnings supplied with it was adequate;

(c) Whether it complied with any applicable design manufacturing, testing or performance specifications; or

(d) Whether it complied with any governmental regulation or standard, any organization standard or recommended practice or procedure or any in-house standards or recommended practice or procedures.

39. If your answer to any subpart of the preceding interrogatories is in the affirmative, for each such system or procedure:

(a) Describe the system or procedure;

(b) State when you had the system or procedure;

(c) State how you implemented the system or procedure;

(d) Identify each person employed by or representing you who had overall responsibility for implementing the system or procedure; and

(e) Identify each document describing or containing information concerning the system or procedure or the implementation of the system or procedure.

40. Prior to April 4, 1999, at any time prior to such date, did your corporation receive notice of any other incidents where a consumer of the substance known as "Invigorate" became ill or died as a result of taking the substance? If so, describe:

(a) The date of each such incident;

(b) The date when you were made aware of each such incident;

(c) The name(s) of the parties involved;

(d) All relevant circumstances of each such incident; and

(e) Any action taken by your corporation in response to such incident to remove the product from interstate commerce, or redesign of the product.

41. At any time before the accident, did you have any system or procedure for receiving, compiling, handling, investigating and/or responding to:

(a) Complaints, notices, or information concerning injuries or deaths allegedly associated with the use of your product called "Invigorate"; and,

(b) Complaints, notices, or information concerning safety hazards allegedly associated with the ingestion of your product known as "Invigorate".

42. If your answer to any subpart of the preceding interrogatory is in the affirmative, for each such system or procedure:

(a) Describe the system or procedure;

(b) State when you had the system or procedure in place;

(c) State how you implemented the system or procedure;

(d) Identify each person employed by or representing you who had responsibility for implementing the system or procedure; and

(e) Identify each document describing or containing information concerning the system or procedure or the implementation of such system or procedure.

43.  At any time since the accident, have you developed and/or implemented any system(s) or procedure(s) for receiving, compiling, handling, investigating and/or responding to:

(a) Complaints, notices, or information concerning injuries or deaths allegedly associated with the use of any of the products you design, manufacture, distribute or sell; and,

(b) Complaints, notices, or information concerning safety hazards allegedly associated with the use of any of the products you design, manufacture, distribute or sell.

44.  If your answer to any subpart of the preceding interrogatory is in the affirmative, for each such system or procedure:

(a) Describe the system or procedure;

(b) State when you had the system or procedure in place;

21

(c) State how you implemented the system or procedure;

(d) Identify each person employed by or representing you who had responsibility for implementing the system or procedure; and,

(e) Identify each document describing or containing information concerning the system or procedure or the implementation of such system or procedure.

45. Have you ever been a party to any lawsuit arising out of a claim relating to injury, illness or death resulting from the ingestion of your product known as "Invigorate"? If so, for each such lawsuit:

(a) State the caption of the lawsuit, the court in which the lawsuit was brought, the docket number the lawsuit was assigned, and the date the lawsuit was instituted;

(b) Identify each party and counsel for each party to the lawsuit;

(c) Identify the lawyers or other persons having information requested in parts (a) and (b) of this interrogatory; and,

(d) Identify each document containing information requested in parts (a) and (b) of this interrogatory.

46. Do you contend that Andrew W. Hayes' death was caused by the acts or omissions of some person or entity other than you? If so:

(a) Identify each and every person and/or entity you contend caused his death;

22

(b) For each such person or entity set forth the acts and/or omissions of such person or entity;

(c) Set forth each and every fact that supports this contention;

(d) Identify each and every witness who claims to have knowledge of facts that support this contention; and,

(e) Identify every document containing information that supports this contention.

47. Do you contend any acts or omissions of any person or entity other than you constituted a superceding or intervening cause of Andrew W. Hayes' death? If so:

(a) Set forth each and every fact that supports this contention;

(b) Identify each and every witness who claims to have knowledge of facts that support this contention; and,

(c) Identify every document containing information that supports this contention.

48. Do you contend that the particular dosage of Invigorate which was ingested by Andrew W. Hayes on the date of his death, April 4, 1999, was tampered with or altered from the time that it left its place of manufacture to the time that it reached Andrew W. Hayes? If so:

(a) Set forth each and every fact that supports this contention;

(b) Identify each and every witness who claims to have knowledge of facts that support this contention; and

(c)  Identify every document containing information that supports this contention.

49.  Have you withheld any information from your responses to these interrogatories and Requests for Production on the basis of the attorney-client privilege, the work product doctrine, peer review, or any other applicable privilege or doctrine?  If so, set forth a description of the information withheld and set forth in detail the facts that form the basis for your claim of privilege.

50.  Do you have knowledge of a company or business known as "American Fitness Beverae, and your relationship, if any with "American Fitness Beverage"?

51.  Identify the person or persons most knowledgeable about the constitution, elements and ingredients of the substance known as "Invigorate", any testing of this product, and the distribution of the product.

52.  For each of the above interrogatories please identify the person who supplied the information set forth in your answer to the interrogatories.

**B. REQUESTS FOR PRODUCTION OF DOCUMENTS.**

1.  Any and all documents identified in your answers to plaintiff's first set of interrogatories, and any and all documents that you were asked to identify in plaintiff's first set of interrogatories, but that were not identified.

2.  Copy of your articles of incorporation and bylaws.

3.  Any and all records describing or demonstrating the relationship between Cabot Industries, LLC. and Invigorate as of April 4, 1999.

4.  Any and all documents describing or relating to the relationship between Cabot Industries, LLC. and Paramount Health & Fitness, Inc. as of April 4, 1999.

5.  The declaration sheet for any policy of insurance that might provide coverage for the injuries involved in this lawsuit.

6.  Any and all documents relating to any governmental agent or agency inspection, review, inquiry or investigation concerning in any way the substance known as "Invigorate".

7. Any and all statements in your possession, by your representatives or otherwise, concerning the incident which is the subject of this lawsuit.

8. Any and all reports and other documents, except reports of experts consulted by you whom you do not intend to all at trial, which describe the happening of the accident or the cause thereof.

9. Any and all documents relating to the distribution of the substance known as "Invigorate" between the years 1995 and 2000.

10. Any and all documents relating to the sale of the substance known as "Invigorate" between the years 1995 and 2000.

11. Any and all documents relating to the design and/or initial formulation of the substance known as "Invigorate".

12. Any and all documents relating to the elements and/or ingredients of the substance known as "Invigorate", both at the time that it was originally designed and manufactured, on April 4, 1999, and through the present time.

13. Any and all documents relating to the packaging of the substance known as "Invigorate" between the years 1995 and 2001.

14. Any and all documents relating to the sale of "Invigorate" under a different name or names or in different types of packaging.

15. Any and all documents relating to any testing of the substance known as "Invigorate" both at the time that it was originally designed and manufactured, as well as any subsequent testing that was done through the year 2001.

16. Any and all documents relating to any warnings, dosage statements or other verbiage on the label of any dosage of the substance known as "Invigorate" at any time during its manufacture and sale, from its first date of manufacture or sale through the present.

17. Any and all documents relating to any registration of the substance known as "Invigorate" with any state or federal government agency or agent, including the Food and Drug Administration.

18. Any and all documents relating to any attempts by the Food and Drug Administration or any other state or federal agency or agents to intervene and/or stop the sale or distribution of the substance known as "Invigorate" between the time when it was first manufactured for commercial sale through the present time.

19. Any and all documents relating to any governmental regulation or standard, any organization standard or recommended practice or procedure, or any in-house standard or recommended practice or procedure relating to the formulation or design of the substance known as "Invigorate".

20. Any and all documents relating to any systems of procedures concerning the safety of consumers of the substance known as "Invigorate" between the years 1995 and the present.

21. Any and all documents including litigation documents relating to any other incidents brought to the attention of your corporation where a consumer of the substance known as "Invigorate" became ill or died as a result of taking the substance, at any time during its commercial sale.

22. Any and all documents that contain information about your policies and procedures regarding consumer illness or death as a result of ingesting the substance known as "Invigorate".

28

23. Any and all documents that constitute, describe, or refer to communications between and/or among the parties to this lawsuit that relate or refer to the substance known as "Invigorate" excluding documents protected by the work-product doctrine or attorney client privilege.

24. Any and all documents that contain the names and/or addresses of individuals contacted as potential fact witnesses.

25. Reports and curriculum vitae for all expert witnesses expected to testify at trial.

26. Any and all police reports and investigative reports by any local, state or federal agency regarding the subject incident, expect the Connecticut State Police report and the report of the Connecticut Liquor Control Commission.

27. Any and all documents that relate or refer to any determination or finding you have made, any investigation or review you have performed or any information or data you have gathered concerning who or what caused or contributed to the subject incident, excluding attorney client privilege.

29

28.  Copies of any medical records or reports pertaining to Andrew W. Hayes.

29.  The entire contents of your file, including but not limited to claims, underwriting, investigations and/or adjustors files and any other documentary material in your possession, custody or control which concerns or relates to the subject matter, averments, claims or defenses of this lawsuit (except references to mental impressions, conclusions or opinions respecting strategies or tactics or privileged communications from and to counsel).

32.  Any and all other documents in your possession, custody or control not otherwise produced which pertain to the subject matter of the incident lawsuit.

THE PLAINTIFF

By: _____
    Ralph J. Monaco, Esq.
    Federal Bar No. CT-13306
    Of Conway & Londregan, P.C.
    38 Huntington Street, P.O. Box 1351
    New London, CT   06320-1351
    860-447-3171 / FAX 860-444-6103
    Attorneys for the Plaintiff

## CERTIFICATION

I hereby certify that a copy of the foregoing was mailed, postage prepaid, to the following counsel of record this 28th day of June 2002:

Rocco Conte, Esq.
O'Connor, McGuinness, et al.
One Barker Avenue, Suite 675
White Plains, NY  10601-1517
Attorneys for Defendant, Cabot Industries, LLC

Ralph J. Monaco, Esq.

31

### **DEFENDANT'S VERIFICATION**

This is to certify that _____, the _____ of Cabot Industries, LLC, the Defendant in this action, have read the foregoing answers to interrogatories and state that they are true and accurate to the best of its knowledge, information and belief on this _____ day of _____, 2002.

CABOT INDUSTRIES, LLC

By:_____

Its

Subscribed and sworn to before me this _____ day of _____, 2002.

_____
Notary Public
Commissioner of Superior Court

32