FILED

2004 APR -5 A 8: 46

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ESTATE OF ANDREW W. HAYES, ADMINISTRATOR, RALPH K. HAYES | ) ) ) | CIVIL ACTION NO. 3:00 - CV - 1504 (AWT) |
| Plaintiff, | ) ) | |
| VS. | ) ) | March 11, 2004 |
| INVIGORATE INTERNATIONAL, INC., CABOT INDUSTRIES, LLC., PARAMOUNT HEALTH & FITNESS, INC., JBN ENTERPRISES, INC., JNG SPORTS SUPPLEMENTS DISTRIBUTORS, and JUST NATURAL GROWTH SPORTS SUPPLEMENT DISTRIBUTORS, INC Defendants. | ) ) ) ) ) ) ) ) ) ) ) | *THE PLAINTIFF DEMANDS TRIAL BY JURY* |

## FOURTH AMENDED COMPLAINT

**COUNT ONE:**     (Connecticut Product Liability Act)

### I. PARTIES

1.     The Plaintiff, Estate of Andrew W. Hayes, and its Administrator, Ralph K. Hayes, are residents of East Lyme, Connecticut.

2.     On or about April 21, 1999, the Plaintiff, Ralph K. Hayes, was appointed Administrator of the Estate of Andrew W. Hayes by the Probate Court for the District of East Lyme, Connecticut and acting in such capacity, brings this action for the death of his son, Andrew W. Hayes, pursuant to C.G.S. §52-555.

3.      On or about April 4, 1999, and at all relevant periods herein, the Defendant, Invigorate International, Inc. (hereinafter referred to as "Invigorate"), was and continues to be a corporation organized and existing by virtue of the laws of the State of New York, transacting business in the State of Connecticut, and it was and may still be in the business of designing, manufacturing, distributing, selling or introducing into the stream of commerce, a substance known as "Invigorate," with the expectation that this substance would be shipped, purchased or used in the State of Connecticut and other states, and in fact shipped or caused to be shipped this substance into the State of Connecticut.

4.      On or about April 4, 1999, and at all relevant periods herein, the Defendant, Cabot Industries, LLC. (hereinafter referred to as "Cabot") and its alter ego, American Fitness Beverage Wholesalers, Ltd. (hereinafter "AFB"), were and continue to be corporations organized and existing by virtue of the laws of the State of New York, transacting business in the State of Connecticut, and they were in the business of designing, manufacturing, distributing, selling or introducing into the stream of commerce, a substance known as "Invigorate," with the expectation that this substance would be shipped, purchased or used in the State of Connecticut, the Commonwealth of Pennsylvania and other states, and in fact shipped or caused to be shipped this substance into the Commonwealth of Pennsylvania and the State of Connecticut. Cabot is the alter ego of AFB by virtue of its common ownership, intermingling of assets and liabilities, and overlap of business.

5. On or about April 4, 1999, and at all relevant periods herein, the Defendant, Paramount Health & Fitness, Inc. (hereinafter referred to as "Paramount"), was and continues to be a corporation organized and existing by virtue of the laws of the Commonwealth of Pennsylvania, transacting business in the State of Connecticut, and it was and still is in the business of designing, manufacturing, distributing, selling or introducing into the stream of commerce, a substance known as "Invigorate," with the expectation that this substance would be shipped, purchased or used in the State of Connecticut and other states, and in fact shipped or caused to be shipped this substance into the State of Connecticut.

6. On or about April 4, 1999, the Defendant, JBN Enterprises, Inc. (hereinafter referred to as "JBN") was and continues to be a corporation organized and existing by virtue the laws of the Commonwealth of Pennsylvania, transacting business in the State of Connecticut, and it was and still is in the business of designing, manufacturing, distributing, selling or introducing into the stream of commerce various sports supplement products, with the expectation that this substance would be shipped, purchased or used in the State of Connecticut and other states, and in fact shipped or caused this substance to be shipped into the State of Connecticut.

7. On or about April 4, 1999, the Defendant, JNG Sports Supplements Distributors, Inc. (hereinafter referred to as "JNG Sports") was and continues to be a corporation organized and existing by virtue the laws of the Commonwealth of Pennsylvania, transacting business in the State of Connecticut, and it was and still is in the business of designing, manufacturing,

distributing, selling or introducing into the stream of commerce, a substance known as "Invigorate", with the expectation that this substance would be shipped, purchased or used in the State of Connecticut and other states, and in fact shipped or caused this substance to be shipped into the State of Connecticut.

8. At relevant times herein, the Defendant, Just Natural Growth Sports Supplement Distributors, Inc. (hereinafter referred to as "Just Natural Growth") was and continues to be a corporation organized and existing by virtue the laws of the Commonwealth of Pennsylvania, transacting business in the State of Connecticut, and it was and still is in the business of designing, manufacturing, distributing, selling or introducing into the stream of commerce, sports supplement products with the expectation that this substance would be shipped, purchased or used in the State of Connecticut and other states, and in fact shipped or caused this substance to be shipped into the State of Connecticut.

9. On or about January 8, 2001, the Defendant JBN purchased the business assets and liabilities of Defendant JNG, and therefore JBN is liable for the liabilities of JNG by virtue of the nature of the transaction that included to wit, assumption of certain liabilities, assuming liability for JNG's accounts payable, taking over the business premises of JNG, employing certain employees of JNG, and assuming JNG's accrued benefits and 401K plan.

10. On or about January 2, 2001, the Defendant JBN, through its employees and/or agents, created a new company, the Defendant, Just Natural Growth Sports Supplement Distributors, Inc., in the Commonwealth of Pennsylvania, and as of January 8, 2001, assigned all

of its rights and interests in JNG to said Just Natural Growth Sports Supplement Distributors, Inc. Therefore, Just Natural Growth Sports Supplement Distributors, Inc., is also liable for the liabilities of JNG as the successor corporation.

11. Upon best information and belief, Defendant Invigorate was the manufacturer of the product, Defendant Cabot was a distributor of the product, Defendant JBN Enterprises, Inc. through its acquired company JNG was a distributor, Defendant JNG Sports Supplements Distributors, Inc. was a distributor, Defendant Just Natural Growth as the successor of JNG was a distributor, and Defendant Paramount was the retail seller of the product.

12. The Defendants are product sellers as defined by C.G.S. §§52-572m.

## II. JURISDICTION

13. The jurisdiction of this Honorable Court is invoked pursuant to 28 U.S.C. §1332 in that the amount in controversy exceeds the sum or value of Seventy-Five Thousand ($75,000.00) Dollars, exclusive of interest and costs, and is between citizens of different states.

## III. VENUE

14. Pursuant to 28 U.S.C. §1391(a), venue is proper in this district since a substantial part of the events giving rise to the claim occurred in this district, and the Defendants are subject to personal jurisdiction in this district.

## IV. FACTS

15. In the evening hours of April 3, 1999, and in the early morning hours of April 4, 1999, the decedent, Andrew W. Hayes, was in an establishment known as The Lyme Tavern

located in East Lyme, Connecticut. On the aforesaid dates and at approximately the aforesaid times, the decedent drank beer and was socializing with other individuals in The Lyme Tavern.

16. Prior to taking the substance known as Invigorate, as hereinafter described, the decedent was conversing clearly and socializing with other patrons at The Lyme Tavern.

17. At one point on the aforesaid date and at approximately the aforesaid time, one of the patrons in The Lyme Tavern, Kevin Gibbs, provided the decedent with a liquid containing the substance manufactured and/or sold by the Defendants, which substance is known as "Invigorate."

18. Shortly thereafter, the decedent collapsed, and then became unconscious at approximately the time at which The Lyme Tavern was closing, or approximately 2:00 a.m. on April 4, 1999.

19. Shortly thereafter, one Kurt Hayes, brother of the decedent, took the decedent to the home of Kurt Hayes.

20. Shortly thereafter, the aforesaid Kurt Hayes observed that the decedent was having difficulty breathing and called for emergency assistance.

21. The decedent was taken by ambulance to Lawrence & Memorial Hospital in New London, Connecticut, where he was pronounced dead at 5:14 a.m., after all efforts to resuscitate him failed.

22. The injuries, damages, and resulting death to the Plaintiff were caused by the defective and unreasonably dangerous substance known as "Invigorate" manufactured, sold or distributed by the Defendants.

23. Upon best information and belief, said Kevin Gibbs purchased the substance from Paramount in Pennsylvania, which had originally purchased the substance from JNG Sports Supplements, which had purchased it from Cabot, and thereafter Gibbs transported it to Connecticut. Furthermore, Defendants Invigorate, Cabot, Paramount, JBN, JNG Sports, and Just Natural Growth knew or should have known that said Invigorate would be transported to Connecticut and used in the State of Connecticut.

24. The Defendants are liable and legally responsible for the injuries and damages to the Plaintiff and the death to the decedent by virtue of C.G.S. §52-572m, *et seq.* (Connecticut Product Liability Act), in one or more of the following ways, in that:

    (a) Said substance was defective and unreasonably dangerous and could not be used without unreasonable risk of injury to the decedent;

    (b) Said substance was defective and unreasonably dangerous because when taken in certain quantities, it could lead to an unreasonable risk of injury or death to the Plaintiff;

    (c) Said substance was defective and unreasonably dangerous because when taken with alcohol, it created an unreasonable risk of injury or death to the Plaintiff;

(d) The Defendants failed to warn or instruct the Plaintiff that the substance was defective and unreasonably dangerous, especially when taken in large quantities or when taken with alcohol;

(e) The warnings and instructions that were given were inadequate and failed to provide sufficient notice to the decedent of the dangerous propensities of said product;

(f) The Defendants misrepresented to the decedent and the general public that the substance in question was safe for use by the public;

(g) The Defendants failed to disclose to the decedent and the general public the dangerous propensities of said substance;

(h) The Defendants were negligent in that they failed to properly and adequately test said product prior to marketing it in that they designed said product in a defective manner;

(i) The Defendants were negligent in that they knew or should have known of the dangerous characteristics of said product, yet continued to manufacture and distribute said product;

(j) The Defendants were negligent in that they used improper materials in the construction of said product;

(k) The Defendants knew or should have known of the dangerous characteristics of said product, and yet decided to market and continued to market it;

(l) The Defendants knew that components of said product were dangerous, and were deemed dangerous by The Food and Drug Administration and other competent bodies, yet decided to market the product and continued to market the product;

(m) The Defendants constructed the product in such a way so as to attempt to circumvent the rules and regulations of The Food and Drug Administration and other similar regulatory bodies in an effort to continue to market its product;

(n) The Defendants breached an implied warranty of merchantability in that said substance was not of merchantable quality or fit for its intended purpose; and

(o) The Defendants breached their express warranties that said product was safe and effective for its intended use.

25. The aforesaid product was not altered or modified in any way by the decedent or any third party from the condition in which it was manufactured and sold.

26. At all times relevant herein, said substance was expected to and did reach the decedent without substantial change in condition in which it was sold or manufactured.

27. As a direct and proximate result of the defective and unreasonably dangerous product known as "Invigorate," the decedent became semi-conscious, then unconscious, and suffered great physical and mental pain and anguish prior to his death. As a further result of the defective and unreasonably dangerous substance manufactured by the Defendants and taken by the decedent, the decedent died, thereby depriving him of the enjoyment of his life, and

9

furthermore, the decedent's ability to carry out all of his life's activities, including his ability to earn wages, has been permanently destroyed.

28. As a further result of the defective and unreasonably dangerous substance, the Plaintiff, Estate of Andrew W. Hayes, was required to spend various sums of money for the funeral and burial of the decedent, necessitated by his untimely death.

**COUNT TWO:** (Connecticut Unfair Trade Practices Act)

1-28. Paragraphs 1 through 28 of the First Count are hereby realleged and incorporated as Paragraphs 1 through 28 of the Second Count, as though fully set forth herein.

29. The aforementioned actions of the Defendants, Invigorate International, Inc., Cabot Industries, LLC, Paramount Health & Fitness, Inc., JBN Enterprises, Inc., JNG Sports Supplements Distributors, Inc., and Just Natural Growth Sports Supplement Distributors, Inc. constitute a violation of the Connecticut Unfair Trade Practices Act (hereinafter "CUTPA"), C.G.S. §42-110a, *et seq.*, in that said actions:

(a) Constitute unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce;

(b) Were immoral, unethical, oppressive or unscrupulous; and

(c) Offend the public policy of the State of Connecticut.

30. The aforementioned actions of the Defendants were performed in the general course of their trade or business and caused the injuries and death to the decedent, Andrew Hayes.

31. The aforementioned actions of the Defendants were performed consistently throughout the State of Connecticut and in other states, and occurred on multiple occasions.

**WHEREFORE,** the Plaintiffs respectfully request:

1. Fair, just and reasonable compensatory damages in the amount of Five Million Dollars ($5,000,000.00);

2. Punitive damages in the amount of Ten Million Dollars ($10,000,000);

3. Attorneys' fees;

4. Such other relief as this Court deems just and equitable.

          Respectfully submitted,
          THE PLAINTIFFS

          By: _____
          Ralph J. Monaco, Esq.
          CT-13306
          Of Conway & Londregan, P.C.
          38 Huntington St., P.O. Box 1351
          New London, CT 06320-1351
          860-447-3171 / FAX: 860-444-6103
          Attorneys for the Plaintiffs